Our final argument this morning will be 18-2176 Contreras v. Dona Ana County Board. Ms. Ray, you may proceed. Good morning, Your Honors. May it please the Court. My name is Katharine Ray and I, together with Margaret Strickland, represent Kathy Contreras on behalf of her minor son, A.L. I'm hoping to reserve two minutes for rebuttal. This case, as framed by the District Court, is about qualified immunity. Whether individual officers and the county are entitled to qualified immunity. The traditional test for qualified immunity for individual defendants has only two parts. The plaintiff must show a constitutional violation and must show that the constitutional violation was clearly established. To hold a governmental entity liable for a constitutional violation, the plaintiff must also show that a constitutional violation occurred, but not that the law was clearly established, as that term is used generally in qualified immunity analysis. When the District Court in this case ruled that for deliberate indifference cases against a governmental entity, the plaintiff must show that the county was deliberately indifferent to clearly established law, the District Court, despite its statement to the contrary, afforded the county qualified immunity. The United States Supreme Court in Owen v. Independence explicitly rejected extending the protections of qualified immunity to governmental entities. In 1997, in Board of County Commissioners v. Brown, the court determined that a county's deliberate indifference and lack of training could support a constitutional violation. And the Brown court addressed the notice that is necessary to hold the county responsible and did not require deliberate indifference to clearly established law. Instead, the court observed that a county could have notice of the risk of constitutional harm if there was a pattern of tortious conduct, or if a constitutional violation was a highly predictable result of a failure to train. The Eighth and Sixth Circuits have held that in order for a municipality to be deliberately indifferent, clear constitutional guideposts must be established for the municipality to have notice. This language, clear constitutional guideposts, comes from Justice O'Connor's concurrence and dissent in City of Canton in 1989. City of Canton left open the possibility of the failure to train claim that was eventually developed in Brown eight years later. There's not a complete failure to train in this case, is there? There is conflicting evidence on whether officers are trained to lock the control panel that controls the cell doors. There is affidavit testimony that the county does, or at least that supervisors do instruct officers to lock the control panel. But the officer at issue, in this case, Officer Casado, told the investigator that he'd never been instructed to lock the control panel and that no one on his shift did it, which is a disputed fact. What was the policy here and how was it violated and by whom? The policy, the district court found that there was no policy, that there was no policy regarding whether to lock the panel and that there was a dispute about whether any of the officers had ever trained, been trained to lock the panel under these circumstances or generally under any circumstances. It seems like you're kind of going at the constitutional violation in a backward fashion rather than focusing in on the conduct of the three individual defendants. Maybe I'm misunderstanding your argument, but you have to show that the three officers were deliberately indifferent to your client's rights and there's an objective and subjective component to that. Taking the latter first, what's your best evidence as to the officer's knowledge that their, I guess, negligence or failure to prevent the one individual from opening the doors, that they subjectively knew that was a substantial risk and chose to ignore it? Your Honor has chosen to view the subjective risk from the perspective that the county has presented it, which is that the officers needed to know, subjectively know, that the conspiracy that actually happened was what was going to happen. Subjective knowledge of risk doesn't require that specificity of knowledge. Officer Casado and Cadet Platero both knew subjectively, they didn't need to draw the inference because they actually knew, that A.L. had been threatened by three individuals the day before. They both knew that the individual who was out of his, and there had been administrative segregation, or some sort of segregation, and everybody had been separated and put in their cells, and only one of them could be out at a time. Everybody knew there had been a threat. Everybody knew that one of those threateners was out of his cell and roaming the area to take a shower. So what Officer Casado and Cadet Platero subjectively knew was that there had been a threat, that one of the threateners was loose in the area, and they both knew that the panel was unlocked. They both subjectively knew that the panel was unlocked. Sergeant Luna had the same information about the threat, and he had the same information that the threatener was roaming. He also had information that there had been prior incidents related to accessing the control panel, and he had more specific information, at least the record shows us that he had more specific information, that Herrera himself was violent and dangerous. What was the prior incident involving the control panel? There were four. Two of them resulted in injuries, and two of them were attempts made to access the panel. The first was in October of 2014, where a detainee crossed the red line that's in front of the panel using his body to try to access it. Did he access it? It's not clear from the report to me whether he accessed it or not in that one. In November of 2014, so we're going chronologically forward in time, a detainee accessed the control panel, opened two doors, and another detainee was beaten. In January of 2015, a detainee opened the door from the panel and went into another detainee's cell, and there was a fight. And then in February of 2015, and this is the one for which Sergeant Luna, we know who was the supervisor for this, the detainee kept crossing the red line and trying to touch the panel. So from his affidavit, we know that Sergeant Luna was employed by the county, employed in this area during the time of those prior incidents, and can infer knowledge of those incidents, at least the one. What's the evidence of the knowledge of Casado and Platero as to the prior attempts to access the control panel? I have no evidence that they knew about the prior attempts, which is why I separate them out, that they had knowledge, actual knowledge that the panel was unlocked and accessible. And while Sergeant Luna didn't know whether the panel was unlocked, he'd assumed that it was, but he had a separate knowledge of an enhanced risk based on these prior incidents. Well, on this day, did the officers that were on duty, did they know that it was unlocked? Two of them did. Officer Casado did, and Cadet Platero knew it was unlocked. The evidence is unclear about Sergeant Luna. He says he didn't know whether it was or wasn't unlocked. These prior incidents are also relevant to demonstrate municipal liability in that notice context, whether the county had notice, the notice necessary to impose liability on the county. And I think the gap in time is interesting in that respect. The district court said that the gap in time between February 2015 and May of 2016 sort of shows there isn't a pattern of prior incidents because there was this large gap in time. Interestingly, Officer Casado and Cadet Platero were hired within that gap in time, and we have Officer Casado saying, I got no training to lock that particular, I got no training on the juvenile side to lock that panel, and I got, and no one on my shift does it. So in the intervening time between when these incidents happened and when the incident at issue happened, there's an indication there was no training even though these prior events had happened. Your Honor referenced the constitutional violation and what is required to establish it. That is necessary for both claims, for both the claims against the individual officers and against the county. In order to establish that constitutional violation, plaintiff has to prove that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials acted with deliberate indifference. That they were aware of facts from which the inference could be drawn, that substantial risk of harm existed, the inference was actually drawn, and they were aware of and failed to take reasonable steps. And really, your argument is that based on the prior incidents, that they knew or they were reckless in not knowing that the control panel should be locked at all times. Yes. Yes. Certainly with respect to Sergeant Luna. With respect to Officer Casado and Cadet Platero, we have the direct knowledge that it wasn't locked. Even though these young men were all segregated and separated from each other, the act of separating them didn't carry with it much protection when subsequent to that act, the threatener was able to access the door locks to the cells and allow them access. Are the facts here distinguishable from the prior incidents because you had three officers in the common room where the control panel was. There was just the one detainee on that level. The others, there were no other individuals nearby and they were able to get to the cell within 20 seconds after the cell block was open. So they reacted quickly. Are those facts, does that distinguish your case from the prior cases? I think when you turn back to the standard, when you turn back to whether deliberate indifference turns on the knowledge of a substantial risk and reasonable steps taken before and not after. The fact that they were able to get up the stairs and to stop the affray doesn't really inform whether they acted with deliberate indifference in allowing Mr. Herrera to access the panel. Let's assume you have a constitutional violation. The more recent Supreme Court jurisprudence requires you to prove that it's clearly established to have a case that is factually very close, right? Do you agree with that? I agree with that in the context that those cases can be read that way in the context of excessive force cases. Okay, so you're making a distinction between deliberate indifference and excessive in Fourth Amendment cases. I'm even making a distinction between deliberate indifference in pretrial TTE cases and excessive force cases. The Supreme Court has signaled a difference, even as far back as Sacramento v. Lewis, a difference in cases involving rapid decision making and the need for quick decisions and lining cases up with specific facts so that officers have the tools to know whether what they're doing is constitutional. But in cases where they have time to deliberate and in cases where there's time to think of a plan and time to think of a course of action, such specificity isn't quite as necessary. What level of specificity do you think you need to have? I think that Barry and I think that Howard both establish that vulnerable inmates, inmates that we know are vulnerable, cannot be allowed access by their jailers under circumstances like these. And I think that the facts of both of those cases, of Barry and of Howard and more of Barry, are similar enough when you strip away the things that don't matter. When you strip away the, when you look at, there was a known threat, there was access, there was difficulty in surveillance. So in this case the officers were downstairs watching the inmate who was roaming and there was some distance between them and the other people involved. So I think those two cases establish, clearly establish the law well enough to get these... Howard, what was the other case? Barry. Okay. You wanted to say some rebuttals? I did. Good morning, Your Honors. May it please the Court of Counsel. Damian Martinez and Haley Grant with Hold Minot Martinez on behalf of the county defendants. Counsel, let me jump in here while I'm thinking about this. Are there any cases where you have a jail or a penal institution, a prison or anything like that, that guards in that institution, and for example here where we have the guards, that it's just not common sense that you keep doors locked, both for the protection of the inmates and the protection of the guards that are in a penal institution like that? In other words, does it have to be a case in the Tenth Circuit or in the Supreme Court when the very substance of what's involved, a prison, which I call this, I mean, you've got to keep the door locked. I would agree that it makes sense that you would keep the door locked in a prison. But if we go back to the Davidson v. Cannon case from the United States Supreme Court, that case tells us that negligence itself is not enough. I agree with you. I follow that. But here you've got the videos showing exactly what was going on that they just knew. And it's just not negligence. I mean, they leave that unlocked. Or at least I shouldn't say that would be my opinion. It's more than negligence. Number one, because of the location of where this is occurring. Number two, the knowledge they had about the potential beating that they were going to give. It just smacks to me that do I really need to have a case that says that this is deliberate indifference to the situation? Your Honor, I think your question poses more of is this the obvious case is the way I'm understanding it. Not unlocking the door, is that an obvious case which would allow the plaintiff to meet their burden under qualified immunity? And I think in some instances, not locking the door would be enough. There are cases out of other circuits, not within the Tenth Circuit. For instance, I believe it was the Erickson case out of the Eighth Circuit where there was a detention officer who left a gate unlocked that separated two portions of the maximum security section. And then that officer actually had time and noticed that it was unlocked and logged it and did nothing to make sure that that particular gate was secured. And that led to an assault. This case is a little bit different. If you look at the affidavits of the detention officers involved, they're found in the appendix at 38, 45, and 50. Sergeant Luna said that he trained and instructed people on shift to lock those doors. Detention officer Casado said that he was instructed to lock the doors in the general facility where the adults were kept, but not in the juvenile facility, which doesn't really make sense because at the time of this incident on May 4, the juvenile facility was inside the adult facility. It is actually now an adult pod. Weren't the doors locked at the time of this incident? They were unlocked by one of the other inmates. They weren't. If you go to the deliberate indifference standard, we recognized a risk. The county defendants did recognize a risk, and they addressed that risk. On May 3, when A.L. was brought into the detention center, he was threatened by all three of his assailants through their door. And so the detention center affirmatively recognized that and inferred that there could be an issue, and they separated all these four individuals from everybody in the pod. And only one individual could come out at a time. And at the time that they removed Ereda, all the doors were locked. There were three officers who were tasked to watch Ereda. Now, I would concede that they probably didn't watch him close enough. And Ereda went to access the kiosk that would allow him to get stuff from the commissary, and then he moved toward the control panel, and that's how he unlocked the doors. Now, there's nothing in the record that would establish that the officers involved in this could infer that there was a conspiracy that these three individuals were going to try to assault A.L. by unlocking the door. And there's nothing in the record that we could infer that these— What about the four prior incidents? The four prior incidents, we're going to call those two incidents because two of them, they didn't really access the door. What they did is, I guess, as kids often will, they'll say, I'm going to poke at the screen here. But the two incidents that occurred there, those weren't incidents where there was an act of conspiracy going on. Can't you infer the act of conspiracy from the threats that these three young men, including the one that punched the button, made against the victim when they first came? I think—Judge Carson, that's a great question. I think you can confer the act of conspiracy, and I think the officers and the county did what they were supposed to do by separating them. But you have to take it another step. There's another step in this conspiracy. These officers have to infer that the conspiracy is going to involve accessing the panel. What if instead of a panel, these cells were operated by keys, and one of the officers had just left their keys out on a table where this kid could grab them? That's an interesting question because we talked about that. I like to call that the Mayberry incident where you leave the keys close to the jail cell. I think it just depends on the facts and circumstances. If it were a key-operated jail cell and the officers had some information that they could infer that somebody was going to try to get those keys— Well, let's take this case. You have someone out who's threatened to harm the young man. The keys are sitting on the table. The officers are watching TV and not paying attention to the pod. And the young man they knew had threatened the victim, grabs the keys, opens the door, and beats him up. Is that an obvious case under Judge Baldock's line of questioning earlier? I don't know if it would be an obvious case. As long as the officers were close enough to the keys, sometimes you just set your keys on the table. It would be no different than an officer having a key ring on his person, on his hip, and a detainee swiping those keys off his hip. I think that would be the same sort of scenario where that might be more negligence than anything and it wouldn't arise to deliberate indifference. Well, I guess to make our hypothetical work, we'd have to have the keys in a place where he could swipe them and get inside the cell before the officers could get up there and stop it. So they'd have to be far enough away where that could happen. Judge Carson, I think to make the hypothetical one where deliberate indifference might occur is you leave the keys on the table and there's no officers in the pod. And let's remember there were officers that were within several feet from the control panel, but for detainee Herrera making his move to the control panel, this would have never occurred. In my position, it's negligence what occurred, but negligence isn't deliberate indifference. Now, with respect to counsel's position, the court asked earlier about clearly established cases. And the clearly established cases were the cases cited by counsel that would clearly establish in this case that these officers were deliberately indifferent. They were cited as the Berry case and the Howard case. And as the Supreme Court has instructed, cases, they do not have to be exact. I believe it was the Poor v. Glantz unpublished case that both Judge Baldock and Judge Timkovich were on last year that they pointed out that clearly established is not some sort of scavenger hunt. And you don't need to find an exact case every time or it'll be nothing but qualified immunity. But Berry and Howard are significantly different from our case. And there was warnings to the jail. The decedent in that case warned the jail that he felt his safety. He felt for safety and so did his spouse. And the jail had absolutely no policy. It was a municipal liability case that would address keeping him separated. And as a result, he was strangled and hung in the shower. Now, if you go to the Howard case, that case is even more distinct from this case. Howard involves a sexual assault. And this isn't an assault. An assault is an assault. But in Howard, this individual was moved from a jail or a prison where he was already being extorted, raped and beat up by a gang led by an individual named Ghost. And they moved him to another prison. And members of that gang were still in that prison. And Howard advised his counselor and many people within the prison that he that he was afraid for his safety. And what they and what those officers told them is crime doesn't pay. And you got to get get used to not being safe in here. That's clearly officers having information that that this individual is at a substantial risk of harm and choosing to do absolutely nothing about it. That's not the facts. And in this case, those cases aren't close enough because in this case, we recognized that there was issues with safety and we took reasonable steps. We took reasonable steps by segregating these individuals. Let me go back to this. The qualified immunity, as you and I both know, the qualified immunity exempts them from even having to go to trial if it's granted to them. And here, I believe what we have is a trial court granted qualified immunity to the defendants. In this case, what we have before us or before me that what's bothering me is the fact that is there enough for a jury when you have the facts so clear? As these gentlemen standing there sitting there watching TV and the pod being unattended, can a jury infer that there was deliberate indifference to the actions and conduct of these officers in protecting the incarcerated person? And I'm looking at a case that came out after this case is the Dury v. Minor case. You all haven't cited that. Unfortunately, I was on that panel also. But that's the question that comes up. Is there an inference here that the jury could reach on that basis that the conduct is so bad, given the time, place, and manner of what's going on, that that becomes an inference that the jury could say, yeah, that's clearly indifferent to the safety of the injured party? The way I would answer that question, Judge Baldock, is this way. Before we even get to that issue of whether there is a fact for the jury to infer, plaintiff has the burden to meet the two-part test in qualified immunity. And it's our position that plaintiff has not shown a 14th Amendment violation, not using general terms of we would all agree that at some point jails are in charge of individual safety. But plaintiff would first have to show that first prong of a constitutional violation that was clearly established. And I don't think that that's there. And I think that's how Judge Wormuth in the lower court ruled. Judge Wormuth, he didn't deal with prong one. He just dealt with prong two and said there's no clearly established case that would evidence a constitutional violation. Counsel, your time's expired. Would you put two minutes up for Ms. Ray? Thank you, Counsel. Thank you. Thank you. I'd like to take a moment to go back to Barry and to Howard because the way that Counsel explained Barry to you was that there was a known danger, a co-conspirator, co-conspirators were housed together and that one had informed on the other, that there was no policy about separating co-conspirators and that he was strangled and the gentleman was murdered. And in this case, there was a known danger, there was a known risk that this particular inmate who was loose posed to another person that they were in charge of protecting, that there was no policy about locking that control panel to keep the doors closed. Does there have to be a policy? That's where I am. Can there be a condition that is so egregious, such as a penal institution, that it's common sense that things have either got to be locked or other people have got to be denied access to them? Is that not in itself sufficient? I agree. I think it is. Well, I don't want you to agree. What authority do you have for that? We have all, we have even the most recent Supreme Court cases dealing with qualified immunity and the narrow factual patterns that are required. The Supreme Court continues to acknowledge that obvious cases will exist. Obvious cases, and obvious cases don't mean cases where there are no standards and we all just say, well, that has to be wrong. Obvious cases refer us back to the general constitutional principles. Obvious cases, in this case, take us back to Farmer, where we know what the standard is. We know what the broad constitutional standard is. And we know that a jury could find that the county's conduct and the officer's conduct under these circumstances doesn't meet that obvious constitutional standard. I'm concerned that what you're doing is you want to define the issue around the control panel by itself. And it seems to me there may be a broader issue floating around out here. And that is that the counties and the institutions effort to segregate the victim in general. So what they should have had a policy for and what they should have done was basically to keep him safe, to take steps to keep him safe. And it's undisputed that they did that to some degree, but they fell down on the job when it came to locking this panel up. And I just, I hear your argument and you want to talk about what happened with respect to the panel only and throw out the other steps they took. May I answer? Yeah, you may, of course. It's all relevant. The jury would hear all of this evidence and a subset of an element within the deliberate indifference standard is whether reasonable steps were taken. So deliberate indifference is defined by substantial risk and whether reasonable steps were taken. And now that we're all the way down to reasonable steps, we're no longer in this heightened knowledge sense. The jury would have to decide whether under these circumstances, leaving the control panel unlocked, whether the segregation was enough. Thank you, counsel. Your time has expired. We appreciate the arguments. Those were well argued. I also want to thank the audience for your attention and diligence in sticking through with us today. Good luck when you talk about it when you get back to school. Court will be adjourned until further notice.